In the
United States Dist Court
Southern Dist of Indiana
Terre Haute Division.

SCANNED at WVCF and Emailed on

12·6·23 by ___ - 38 pages.
(date)    (initials)  (num)

Dominique Clark
(Plaintiff)

Vs

Christopher Holcomb
Kevin Gilmore
(Defendant)

Cause# 2:23-cv-00558-JRS-MKK

**FILED**

**12/06/2023**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Civil Rights Complaint
(With Jury Demand)

This is a 1983 Action filed by Dominique Clark, a prisoner alleging violation of his constitutional rights and seeking money damages compensatory and/or punitive as well as requesting a trial by jury.

I. Jurisdiction

1. This is a civil action authorized by 42 U.S.C Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. section 1331,1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. section 2201, 2022. Plaintiff if claims injunctive relief it is authorized by 28 U.S.C. 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

1.

2. The Southern District of Indiana is an appropriate Venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events given Rise to this claim occured.

## II. Plaintiff

3. The Plaintiff Dominique Clark, is and was housed at all times mentioned herein a prisoner of the State of Indiana in the Custody of the Indiana Department of Corrections. He is currently residing at the Wabash Valley Correctional facility 'RHU' restrictive housing Unit Po Box 1111 Carlisle, In 47838.

## III. Defendants

4. Defendant Kevin Gilmore (deputy warden) is the Superior authority at the Wabash Correctional facility. The Previously stated Defendant is legally responsible for the safety and/or welbeing of all inmates housed within said facility, its day to day operations as well as the supervision of all staff holding Custody positions at said facility.

5. Defendant Christopher Holcomb is responsible for the overseeing and/o maintaining the movements, safety, welbeing as well as the day to day operations of the 'RHU' restrictive housing Unit and all the offenders being housed within its confines

2.

6. Each Defendant is being sued in his/her individual as well as his/her official capacity. At all times mentioned within said complaint each Defendant acted under the color of State law.

## IV Statement of facts event #1

7. On the 14th and 15th day of Sept 2021 the staff at the Wabash Valley Correctional Facility 'RHU' Restrictive housing unit orchestrated a compliance shakedown of said facility in its entire.

8. This previously mentioned shakedown was to locate items that had for some time been authorized but do to current events had now been classified as contraband and inform offenders of additional policies and procedures that were to take effect immediately.

9. One of the recent policies in question was that the lights within the offenders cells were to be on and isolated to remove the offenders access to operate said lights to their liking from 6am-6pm 7 days a week.

10. Do to there being a malfunction with the Plaintiffs lighting when the policy was enforced the lights within the Plaintiffs cell would extinguish instead of illuminate forcing the Plaintiff to remain in total darkness until the time of 6pm when the Plaintiff was granted control of said lights within his cell.

11. The Wabash Valley Correctional facility 'RHU' restrictive housing unit does allow those offenders residing at said facility to purchase a television for passtime, but do to the Plaintiff's unfortunate financial stability the Plaintiff was unable to do so.

12. Therefore, receiving light from an alternative light source would be deemed non existant do to the previously established Plaintiff's unfortunate financial stability. With this being said when the Plaintiff expresses "total darkness" that is the exact picture the Plaintiff wishes to paint for this court.

13. Not only was the unable to watch television he was hindered from partaking within any Reading, studying, doing and or Researching legal work as well as writing to the Plaintiff's loved ones.

14. The Plaintiff would attempt to explain to the control booth (bubble) that if they could simply unisolate the control over the lighting the Plaintiff would be award the privilege of turning on his lights. Also, the Plaintiff assured the control booth he would see to it the light would remain on for the duration that is mandated per New policy, This fell on def ears.

15. On the 28th day of Oct 2021 the Plaintiff attempted to contact the Defendant Christopher Holcomb via the offender Interdepartmental mail. (there was no response nor was the issue addressed)

4.

16. Once the Plaintiff had failed to receive a Response from the Defendant Christopher Holcomb the Plaintiff then began to Keep a log of the days in which the lights in question were off.

17. On the 15th day of Nov 2021 the Plaintiff's loved ones once learning of the situation in question attempted to contact Defendant Holcomb via his personal telephone extention but said task was to no avail.

18. On the 9th day of Nov 2021 the Plaintiff then reach out to the mental health Department via a health care and began to inform mental health of the matter at hand as well as emotions he had began to experience do to said matter.

19. On the 15th day of Nov 2021 the mental health behavior specialist responded to the Plaintiff's health slip stating a booklet was provided and Defendant Holcomb was contacted on the 12th day of Nov 2021. Said booklet did infact arrive via the offender mail the next day of the 15th day of Nov 2021.

20. On the 26th day of Nov 2021 the Plaintiff again attempted to resolve the matter by reaching out to Defendant Keon Gilmore via the offender Departmental mail. The Plaintiff explained the situation at hand and asked Defendant Gilmore to assist in the matter, (there was no response nor was the issue addressed.)

21  In addition to attempting to contact Defendant Gilmore via the offender Interdepartmental mail on the 26th day of Nov 2021 the Plaintiff requested that his loved one once again attempt to reach out and make contact with Defendant Holcomb via his telephone extention. (there was no response nor was the issue addressed.)

22  On the 5th day of Dec 2021 approx two months had elapsed and once again the Plaintiff attempted to reach out to Defendant Holcomb via the offender Interdepartmental mail. The Plaintiff went on to explain in great detail said situation as well as how long has elapsed since the issue in question began. In addition to the prior stated the Plaintiff also explains the psychological emotions such as stress and constant depression he was experiencing. (there was no response nor was the issue addressed.)

23. On the 6th day of Dec 2021 the Plaintiff submitted a health care slip to mental health specialist informing them that he was still experience the previously mentioned symptoms as well as had completed the booklet that had been provided. The Plaintiff made the mental health specialist aware that even though said booklet had been completed it had failed to yield any improvement.

6.

24. On the 8th day of Dec 2021 the mental health specialist spoke with the Plaintiff at his cell front and assured the Plaintiff that the Defendant was fully aware of the matter and said specialist again provided the Plaintiff with an additional booklet. (there was no response nor was the issue addressed)

25. On the 16th day of Dec 2021 the Correctional officer manning the Range on which the Plaintiff resided had been aware of the situation in question for some time felt said matter was of some importance and attempted to speak with Defendant Holcomb in an attempt to assist said matter in any fashion possible.

26. The correctional officer previously mentioned Returned to the Plaintiff's cell and informed him that Defendant Holcomb was in fact aware of the situation and said he would address the matter when he had time (there was no response nor was the issue addressed)

27. The Plaintiff displayed due dilligence in assuring that the Defendants were in fact receiving the notifications pertaining said incident that the Plaintiff would address envelopes, place postage on said envelopes and then mail them out of the Wabash Valley Correctional facility so that said correspondences would Return back to the Wabash Valley Correctional facility addressed to the Defendants Mr Holcomb and MR Gilmore and said notifications would surely Reach their destination to the Defendant's personal mailboxes.

7.

28. On the 28th day of Dec 2021 the Plaintiff for the first time exhausted the previously established method and attempted to contact the Defendants and explaining the issue at hand in great detail Via the United States Postal Service (there was no response nor was the issue addressed)

29. On the 10th day of Jan 2022 the Plaintiff once again reach out in an attempt to contact Defendant Holcomb Via the offender inter-departmental mail in all hopes to resolve said matter. (there was no response nor was the issue addressed).

30. In addition to the just stated the Plaintiff on the same day stated prior, the 10th day of Jan 2022 the Plaintiff also submitted two additional correspondences Via the United States Postal Service (on a prayer that his chances of gaining some sort of acknowledgement would strengthen) to both Defendants Mr Holcomb and Mr Gilmore. (there was no response nor was the issue addressed.)

31. Do to the time frame in which the incident was allowed to continue the Plaintiff's mental state began faulter and the Plaintiff was experiencing deep depression and a vast amount of stress related to this matter.

32. Therefore, to consume some of the excess time the Plaintiff would carry on conversations with self, sing out loud, initiate altercations with those also residing on the range as well as asking the Correctional Officers to relocate him to a holding cell in the hallway so that he could simple view the Correctional Officers working. The latter was never permitted.

33. On the 16th day of Jan 2022 the Plaintiff exhausted his administrative remedy by submitting an offender grievance initiating the grievance process. Within said grievance the Plaintiff provided the grievance specialist all the details previously stated.

34. As for the section on said grievance that asks the Plaintiff his requested remedy the Plaintiff asked that the grievance specialist to "complete emails to both Defendants explaining the issue and please inform him when she was able to do so.

35. On the 28th day of Jan 2022 the grievance specialist responded to the Plaintiff's offender grievance by stating "Completed"

36. On the 25th day of Jan 2022 the Plaintiff again attempted to contact Defendant Holcomb via the United Postal Service. (there was no response nor was the issue addressed)

37. As to the Plaintiff's correspondences failing to be acknowledged by Defendant Holcomb and the fact that the Plaintiff's attempts to resolve said matters were directed mostly toward said Defendant the Plaintiff attempted to contact Defendant Gilmore once again via the United States Postal Service. (there was no response nor was the issue addressed).

38. The previously stated attempt to mr Gilmore took place on the 4th day of Feb 2022. The Plaintiff exhausted, feeling defeat and helpless simply attempted to weather the storm and whatever was to come, but said attempt had become unbearable and on the 14th day of March, 2022 approx 1½ months later the Plaintiff again attempted to contact the Defendants via the offender Interdepart-mental mail.

39. Within said attempt the Plaintiff proceeding to explain the situation at hand, the vast amount of time that had been awarded to the event to continue its path as well as the Plaintiff's mental state and its tarnishment. (there was no response nor was the issue addressed).

10.

40. On the 19th day of March 2022 the Plaintiff exhausted his Administrative Remedy by submitting an offender grievance initiating the grievance process. As previously established the details were provided once again to the grievance specialist for good measure.

41. Within the section that asks the Plaintiff's Requested Remedy the Plaintiff almost for certain knows the answer but still requests the information whom he can contact whom is in charge of handling said matters as well as the individual whom has to sign the work order to permit the maintenance department to make the repair necessary to resolve said matter.

42. On the 22nd day of March 2022, the grievance specialist responded to the Plaintiff's grievance by instructing him to (even though the Plaintiff has numerous times) write Defendant Holcomb.

43. The Plaintiff from that date continued to reach out to the Defendants via the offender interdepartmental mail. All those attempts mirror those previously mentioned (there was no response nor was the issue addressed).

44. On the 21st day of April 2022 the Plaintiff exhausted his Administrative remedy by submitting an offender grievance initiating the offender grievance process. The Plaintiff informed the grievance specialist that the issue was still occuring as well as how many days that the lights had actually been out through the days leading up to said grievance.

45. The requesting remedy within the prior stated grievance was simple. The Plaintiff only wished for the matter to be addressed.

46. On the 26th day of April 2022 the maintenance entered the range for an unrelated matter and the Plaintiff explained the said situation (as well as another that is addressed in following proceedings) and the maintenance department made the executive decision to over ride the need for Defendant Holcomb's authorization and they repaired said matter. The repair took approx 5 mins.

47. On the 27th day of April 2022 the grievance specialist responded to the Plaintiffs grievance by stating that per maintenance said matter has been addressed and is now working properly.

48. As of that date the lights had been out a total of 149 days of 184. 'total darkness'

IV. Statement of facts Event #2

49. On the 1st week of Oct 2021 the hot as well as the cold water within the Plauntiff's sink has ceased. With the Plauntiffs sink refusing to operate properly this prohibited the Plauntiff from

50. washing his hands upon complete use of the toilet facility, not being able to cleanse his hands throughout the day, from eating his meals with uncontaminated hands as such, being able to brush his teeth as well as not having milk during breakfast each day do to said milk coming in powder form requiring water.

51. The Plauntiff was only alloted to wash his hands and or brush his teeth 3 days per week on the Plauntiff's desinated shower assignments.

52. On the 15th day of Oct 2021 the Plauntiff exhausted his Administrative Remedy by submitting an offender grievance initiating the grievance process. Within the section provided for the Plauntiff's requested Remedy the Plauntiff state "Exhauste my Administrative Remedy.

13

53. On the 27th day of Oct 2021 the grievance specialist responded to the Plaintiffs grievance and informed the Plaintiff that exhausting administrative Remedy is not accepted by that office.

54. On the 22nd day of Oct 2021 the Plaintiff attempted to contact Defendant Christopher Holcomb via the offender interdepartmental mail. The Plaintiff provided the details surround the situation in question and Requested the Defendants assistance. (there was no Response nor was the issue addressed)

55. On the 25th day of Oct 2021 the Plaintiffs loved one upon learning of said matter and understanding the grave Risk the Plaintiff was forced to remain said loved one attempted to contact the defendants Mr Holcomb and Mr Gilmore via the facilities phone and their personal extentions.

56. Within those many attempts throughout the day the Plaintiffs loved one continued to leave messages explaining that the Plaintiff was unable to wash his hands throughout the day and there was a global pandemic (covid) and said virus was allegedly less contagious if one could wear a mask and thoroughly was their hands throughout the day. (there was no return call, no response nor was the issue addressed).

14

57  Approx two weeks had elapsed and once again On the 5th day of Nov 2021 the Plaintiff's loved one attempted to contact the Defendants Mr Holcomb and Mr Gilmore via the Facilities phone and their personal extentions.

58  The Plaintiff's loved one again provided the Defendants of the matter at hand and the risk that was being placed on the Plaintiff and his well being. The Plaintiffs loved one left messages as well as valid call back information. (There were no return calls, no response nor was the issue addressed)

59  On the 12th day of Nov 2021 the Plaintiff in all hopes of strengthening his chance of receiving acknowledgement and resolution on said matter the Plaintiff attempted to contact the Defendants via the United Postal Services. (There was no Response nor was the issue addressed).

60  On the 19th day of Nov 2021 The Plaintiff attempted to Reach out to both Defendants Mr Holcomb and Mr Gilmore via the offender interdepartmental mail providing information the Plaintiff was sure the Defendants were aware of. For good measure the Plaintiff Elaborated on the risk the Defendants were allowing the Plaintiff to be placed in. (there was no response nor was the issue addressed).

61 Prior to the Plaintiffs next attempt to contact the Defendants approx two weeks had elapsed. The situation began to take serious effect on the Plaintiff's mental state.

62. The Plaintiff was constantly reminded daily of the seriousness of the virus, the death total the virus was leaving within its walls, and an individual whom would not wear a mask or wash their hands regularly was more subjectible to contract the deadly virus. This placed the Plaintiff in fear for his safety and wellbeing.

63. On the 4th day of Dec 2021 the Plaintiff scripted two more correspondences and forward one each to both Defendants MR Holcomb and MR Gilmore via the offender interdepartmental mail. (there was no response nor was the issue addressed.)

64. On the 10th day of Dec 2021 the Plaintiffs loved one aware that all past attempts were to no avail, but not wishing for the Plaintiff to continue to endure said Risk with no attempts (even those fruitless) be conducted to resolve the issue at hand, so therefore the Plaintiffs loved one reach out to both Defendants MR Holcomb and MR Gilmore via the facilities phone and their personal extentions. (there were no return calls, no response nor was the issue addressed).

65  On the 23rd day of Dec 2021 the Plaintiff exhausted his Administrative remedy by submitting an offender grievance initiating the grievance process. The Plaintiff explains to the grievance specialist the situation in question and how said matter is tarnishing the Plaintiff's mental state.

66.  On the section that requests the Plaintiff to state his requested remedy the Plaintiff (even though almost certain of the answer, but wishing to be reassured) stated that said issue be resolved and to inform the plaintiff whom is the one who must Request the work order informing maintenance of the need for Repair, whom is the one from preventing said matter from being addressed and whom is the custody staff who has the final say so in the matter.

67  On the 27th day of Dec 2021 the grievance specialist responded to the Plaintiffs grievance and simply stated Lt Holcomb.

68  On the 28th day of Dec 2021 the Plaintiff now having experienced the events previously established in event #1 pertaining to the cells darkness as well as the events stated above the Plaintiffs emotions had taken their toll and the Plaintiff submitted a health care slip to the mental health department requesting their presence.

17.

69. On the 30th day of Dec 2021 the mental health specialist spoke with the Plaintiff at his cell front. The Plaintiff expressed that he was experiencing uncontrolable amounts of depression, stress, anxiety as well as helplessness do to there seeming to be no alternative outcome besides allowing his mental health to worsen and or death.

70. The mental health specialist fully aware of the Plaintiffs daily demeanor, was witnessing the deterioration there of as well as witnessing first hand the events unfolding felt it wise to place the Plaintiff on suicide watch close observation for 72 hrs do to feeling there was a high risk of self inflicting harm.

71. On the 2nd day of Jan 2022 the above stated events were resolved do to the Plaintiff (while in said suicide cell awaiting the relocating back to his assigned cell) was able to speak with a maintenance crew personnel and brought the matter at hand to his awareness and without the work order said maintenance personnel addressed the issue at hand.

## VI. Statement of facts event "3

72. On the 4th day of Jan 2022 (only two days after the sink was repaired as mentioned above in event "2) there began to be a foul odor radiating through the Plaintiffs ventilation stemming from the pipe chase that he shares with the neighboring cells.

73  The pipe chase in question is designed for a 4 cell set up. The plumbing is shared with the neighboring cell, the Plaintiffs as well as the two cells directly above the previously stated two.

74  On the 4th day of Jan 2022 immediately after discovering said odor the Plaintiff exhausted his Administrative remedy by submitting an offender grievance initiating the grievance process.

75  The Plaintiff expressed to the grievance specialist the event that was unfolding as well as the fact that the maintenance personnel had just replaced and or addressed the issue with the Plaintiff's sink.

76  Within the grievance previously mentioned where the grievance requests the Plaintiffs intended remedy the Plaintiff stated that the grievance specialist contact both Defendants MR Holcomb and MR Gilmore and please inform the Plaintiff if she was able to do so.

77  On the 11th day of Jan 2022 the grievance specialist responded to the Plaintiff's grievance and stated " Contacted by telephone".

78  On the 9th day of Jan 2022 the Plaintiff himself attempted to reach the Defendant MR Holcomb via the offender Interdepartmental mail and inform him of the matter and how there was no doubt the smell was feces. (there was no response nor was the issue addressed).

19.

74. On the 17th day of Feb 2022 the Plaintiff knowing that all attempts had fell on def ears and had continued time and time again to mirror one another the Plaintiff still attempted to contract Defendant Kevin Gilmore via the United Postal Service.

75 Within said correspondence the Plaintiff explained in great detail the matter at hand, all the while stressing the factor that this situation was involving human waste and the odor had become unbearable. In addition to the prior stated, the Plaintiff reminded the Defendant that he was being forced to consume 3 meals daily in this manner. (there was no response nor was the issue addressed).

76. On the 19th day of Feb 2022 the Plaintiff's loved one having witnessed the Plaintiff's mental distress and beginning to experience some themself the Plaintiff's loved one attempted to contact the Defendant MR Holcomb via the facilities phone and his personal extention.

77 The Plaintiff's loved one as established in the previously events provided the Defendant with the details of the matter at hand as well as valid return call information. (there was no return call, no response and the issue was no addressed)

20.

78 On the 26th day of Feb 2022 the Plaintiff's loved one having spent the entire day prior attempting to contact Defendant Holcomb felt that just for good measure they would attempt to contact the other Defendant mr Gilmore via the facilities phone and his personal extention. The Plaintiff's loved one went through what was seeming to be de'ja've and followed the previously stated routine. (there was no response nor was the issue addressed.)

79. Approx 2 months had elapsed since these events had been allowed to continue. Within this time the pipechase in question began (do to the drain being insufficient in size to accomidate the output of water as well as the waste blocking said drain) to house standing water.

80 As just stated it had been approx 2 months and the pipechase was containing standing water said water began to leak under the Plaintiffs sink through the seal at the bottom of the wall where the floor and wall are adjoined.

81 The water in question would leak out and leave puddles around the toilet facilities, as well as throughout the Plaintiff's cell if he failed to pay attention UNLESS the Plaintiff addressed said matter himself.

82. Said water was dark in color and was extremely pungent. The odor would wake the Plaintiff some nights do to the Ungodly smell. In addition to the previous statement, there were times the Plaintiff would gag while attempting to consume his meals.

83. The Plaintiff began to use his own clothing and began packing said clothes beneath the sink. The clothing in question would soak up the water and then the Plaintiff would have to remove the clothing, wash it out in his sink and then again place it back beneath his sink.

84. Once the Plaintiff Retired for the night he would have to reawake at least twice per night to repeat the previously stated routine. If the Plaintiff had failed to do so he would awoke to discover his entire cell would be contaminated with the water previously mentioned as well as the contents of the waste provided from the additional offenders whom also share said pipechase.

85. On the 22nd day of Feb 2022 the Correctional officer responsible for overseeing the operations for the day shift within the range that the Plaintiff resided, proceeded to open the main door leading onto said range and was immediately engulfed in the pungent odor described above.

86   Upon the Correctional Officer just mentioned arriving at the Plaintiffs cell front to investigate the matter at hand, the Plaintiff informed the officer that the pipechase contained water that was leaking from the pipes housed within the pipechase in question, thus the foul odor.

87.  The recently mentioned Correctional Officer proceeded to the pipechase and opened its door. At that moment the Plaintiff was informed that his allegations were infact correct and the pipechase had approx 1ft of standing water and the water in question for certain contained waste; also the waste had covered most of the drain prohibiting the water from draining correctly virtually make said drain non existant.

88.  The officer assured the Plaintiff that he would speak with Defendant Holcomb personally and forward an e mail to Defendant Gilmore with information pertaining to this matter.

89.  A short time later the previously mentioned Correctional officer returned to the Plaintiff's cell front and informed him that Defendant Holcomb was already aware of said matter and an e mail was forwarded to Defendant Gilmore as promised. (there was no response nor was the issue addressed).

90    On the 1st day of March 2022 the odor had become such an issue the Correctional officers in charge of manning the wing of the 'RHU' Restrictive housing unit in which the Plaintiff was housed began to voice their complaints to their superiors in all hopes that said superiors would then take their complaints to Defendant Holcomb.

91.   The Plaintiff can not for certain varify (other than said Correctional officers voicing their Complaints) if the Superiors forwarded said Complaints to Defendant Holcomb, but the Plaintiff with certainty can varify that (there was no Response nor was the issue addressed).

92.   On the 20th day of march 2022 the Plaintiff filed a mental health care to request the mental health specailist so that the Plaintiff can express to the Specailist the emotions he is currently experiencing as well as how the 3 events listed within this complaint was begining to destroy the years of progress that the Plaintiff and the Indiana Department of Corrections' mental health Department have accomplished throughout the years of the Plaintiffs oncarceration.

93. The mental health Specialist requested an out of cell session with the Plaintiff. The mental health specialist's focual point was in Regards to the events at hand, the distruction of the Plaintiff's mental status as well as her concern there of.

94. Upon the completion of said session the mental health specialist assured the Plaintiff that she again would Reach out to the Defendant Holcomb in an attempt to resolve said matter.

95. On the 22nd day of March 2022 the Plaintiff received a copy of the mental health care slip he submitted to see the Specialist for an out of cell session and said mental health care stated that Defendant Holcomb had been contacted. (There was no response nor was the issue addressed)

96. On the 7st day of April 2022 the Plaintiff exhausted his Administrative Remedy by submitting an offender grievance initiating the grievance process. The Plaintiff like he has numerous times in the past the Plaintiff provided the grievance specialist the details of the event that was unfolding as well as the deterioration of his mental health

97. Within the section that requests the Plaintiff's intended Remedy the Plaintiff stated to address matter and he was exhausting his Administrative remedy.

25.

98. On the 23rd day of April 2022 the grievance specialist responded to the Plaintiff's grievance by stating exhausting Administrative remedy is not accepted with this office.

99. On the 13th day of April 2022 prior to submitting the offender grievance on the 21st of April the Plaintiff spoke with the mental health specialist at his cell front and informed her that he still had not heard anything from either Defendant and he was approaching the end of his Rope and felt to resolve said matters would be to see he literally seen the end of the Rope so to say.

100. The focual points of the Plaintiffs lack of concern for his exsistance to carryon as well as at the current moment the Plaintiff was still enduring the matter pertaining to the lighting within his cell, Recently experiencing the situation in regards to the Plaintiff's (failing to operate) sink all the while the world experiencing a pandemic that he was at risk contract said deadly virus had left an unforgettable experience of fear at its greatest degree.

101. The mental health specialist felt that the Plaintiff's mental health status had diministred to its Rock Bottom and was on fear that there was certainty if she were to depart the Plaintiff would inflict harm upon himself.

102. Therefore all the Plaintiff's belongings were removed from his cell and the Plaintiff was placed on suicide watch, close observation as well as a progression phase. The progression phase is to moniter the Plaintiff more extensively for a vaster amount of time in a hope to restore the Plaintiff's mental state, and possibly remedy the Plaintiff's distress.

103. The Plaintiff's progression stages consist of the following, 72 hrs of suicide watch, 48 hrs of strip cell, 24 hrs close observation and weekly reviews for 60 days upon completion of the above mentioned.

104. On the 24th day of April 2022 the Plaintiff exhausted his Administrative Remedy by submitting an offender grievance initiating the grievance process. The Plaintiff explained the matter at hand, the amount of time that has been allowed to elapse as well as the deterioration of his mental state. Within the section that requests the Plaintiff's intended remedy the Plaintiff simply stated to resolve the matter

105. On the 26th day of April 2022 the maintenance personnel entered the range in which the Plaintiff resided on an unrelated matter. The Plaintiff proceeded to explain the details pertaining to this incident as well as the events stated in #1 "the lights" and the maintenance personnel felt the matter was serious enough to over ride the Defendant and address said matter

87

106  On the 27th day of April 2022 the grievance specialist responded to the Plaintiff's grievance and stated per maintenance the issue was addressed and is now working properly.

107  As established prior the time in which it took the maintenance personnel to address said matter regarding the lights as well as the pipechase was approx 5 mins. The time that had elapsed regarding the matter with the pipechase was approx 3 months.

## VII. Claim for Relief

108  The Plaintiff incorporated by Reference each and every alligation contained in the proceeding paragraph as set fully herein.

109  The Plaintiff advances this claim of the 8 Amendment the Right to be free of cruel and unusual punishment, conditions of confinement, and deliberate indifference.

110  By this policies and practices described herein, the Defendants have deprived the Plaintiff of minimal Civilized measures of life necessities, and violated his basic human dignity as well as the Right to be free of cruel and unusual punishment under the 8th Amendment of the United States Constitutional Right, Each of the following reasons set forth.

28

111  The Defendants have failed to provide the Plaintiff with a working toilet facility as well as failing to provide the Plaintiff with access to water for drinking and/or to wash his hands throughout the day placing the Plaintiff at grave risk of harm or possibly death do the the corrid virus being present within the times listen within said complaint.

112.  The Defendants have failed to provide the Plaintiff with adequate lighting within his cell to enable him to partake in any common daily needs or wants that he wished and er needed to participate in. Furthermore, the Defendants have refused to assure the Plaintiff was awarded the equal opportunities of those also housed at the Wabash Valley Correction al facility 'RHU' restrictive housing unit between the hours of 6am-6pm.

113  The Defendants Refused to acknowledge the events listed within said complaint as well as the psychological, mental, and emotional distress the events in question caused all the while placing the Plaintiff within a situation with high probability of physical injuries and or possible death.

114. The cumulative effect of prolonged non acknowledged complaints pertaining the conditions of confinements within the Wabash Valley Correctional facility 'RHU' Restrictive housing Unit constitutes a serious deprivation of at least one basic human need, that need being the fair, just treatment that could not be classified as cruel and/or unhuman treatment.

115 The Plaintiff advances this claim against the Defendants listed for the Violations of Deliber Indifference.

116 the fact that the Defendants have displayed deliberately and knowingly refusals to the Plaintiffs needs can only questions their intentions to do so as well as allowing pain and suffering for so long that it could be deemed the intentions to cause wanten pain wether it be physical and/or emotional for their own sadistic satisfaction.

117. the Defendants mentioned within this complaint have been aware of said events via the personnel within the 'RHU' restrictive housing un correspondences from the Plaintiff as well as the grievance specialist, the mental health specialist, meassages left on their personal extentions and by Custody staff responsible for manning the Range whom were watching said events unfold in real time.

30.

118    The Defendants have failed to display the least bit of concern voiced by the Plaintiff and/or the mental health specialist in Regards to the deterioration of the Plaintiff's mental status and wellbeing.

## VIII. Relief Requested

Wherefore the Plaintiff Respectfully requests the Honorable Court to grant Relief for the Plaintiff do to the Defendants acts mentioned above throughout said complaint either based on one individual argument and/or in the state of totality, The Plaintiff Requests this court to;

119    Agree that the acts and omissions described herein violated the the Plaintiff's Rights under the United States Constitution Rights

120    Granting Compensatory Damages in the following amounts of $150,000 for each Defendant for the injuries substained mentally, physically, as well as Knowing the dangers of the Covid Virus and allowing the Risk to Resonate at such a higher probability.

121    Granting Punitive Damages in the amount of $75,000 for each Defendant for the malicious intent and/or desire to witness and/or allow the demise of the Plaintiffs mental status.

122 Any Attorney fees and/or any relief this court sees fit, just and fair

Dominique Clark
Respectfully Submitted

Affirmation

I Dominique Clark, do hereby swear and Affirm under the penalties of perjury that the foregoing Represumption are true and Correct to the best of my knowledge and belief.

Dominique Clark
Respectfully Submitted

Certificate of Service

I hereby swear that the above information was provided to the proper parties involved this 11th day of Sept 2023.

Dominique Clark
Respectfully Submitted.

33